# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. Michael A. Hammer |
| | : | |
| v. | : | Mag. No. 24-10051 |
| | : | |
| GERARDO FERMIN AQUINO VARGAS | : | **CRIMINAL COMPLAINT** |

I, Special Agent Nicholas Brancato, being duly sworn, state the following is true and correct to the best of my knowledge and belief:

### SEE ATTACHMENT A

I further state that I am a Special Agent with the United States Department of the Treasury, Internal Revenue Service, Criminal Investigation, and that this complaint is based on the following facts:

### SEE ATTACHMENT B

Continued on the attached page and made a part hereof:

*SA Nicholas Brancato*
Nicholas Brancato
Internal Revenue Service – Criminal Investigation

Special Agent Nicholas Brancato attested to this Complaint by telephone pursuant to Fed. R. Crim. P. 4.1(b)(2)(A), on March 12, 2024.

HONORABLE MICHAEL A. HAMMER  
UNITED STATES MAGISTRATE JUDGE

/s/ Hon. Michael A. Hammer  
Signature of Judicial Officer

1

## ATTACHMENT A

### COUNT ONE
*(Obstruction of Justice – Grand Jury Proceeding)*

In or around November 2023, in Essex County, in the District of New Jersey, and elsewhere, the defendant,

GERARDO FERMIN AQUINO VARGAS,

did corruptly endeavor to influence, obstruct, and impede the due administration of justice, namely, a grand jury investigation being conducted in the United States District Court for the District of New Jersey.

In violation of Title 18, United States Code, Sections 1503 and 2.

## ATTACHMENT B

I, Nicholas Brancato, am a Special Agent with the United States Department of the Treasury, Internal Revenue Service, Criminal Investigation. I am fully familiar with the facts set forth herein based on my own investigation, my conversations with other law enforcement officers, and my review of reports, documents, and other items of evidence. Because this Complaint is being submitted for a limited purpose, I have not set forth each and every fact that I know concerning this investigation. Where statements of others are related herein, they are related in substance and part. Where I assert that an event took place on a particular date, I am asserting that it took place on or about the date alleged.

### The Defendant, Relevant Entities, and Overview of the Scheme

1. At all times relevant to this Complaint:

   a. Defendant Gerardo Fermin Aquino Vargas ("Aquino") resided in Florida and, from in or around 2012 to in or around November 2023, worked at a branch of an international financial institution ("Financial Institution-A") in Hollywood, Florida (the "Hollywood Branch"), most recently as a Retail Banker.

   b. As part of his duties as a Retail Banker, Aquino was the customer liaison for the Hollywood Branch and, as a subject matter expert regarding Financial Institution-A's products, services, policies, and procedures, assisted new and existing customers with their banking needs.

   c. Financial Institution-A, one of the largest retail banks in the United States, maintained policies and procedures related to anti-money laundering ("AML"), anti-bribery, and anti-corruption. Pursuant to these policies and procedures, Financial Institution-A prohibited any employee from requesting or receiving anything of value in exchange for influence over that employee's act or decision. Financial Institution-A also prohibited employees from falsifying accounts, documents, and records. Financial Institution-A provided these policies and procedures to all employees and required employees, including Aquino, to complete annual AML and anti-bribery trainings.

   d. Financial Institution-A also had policies and procedures regarding onboarding new individual customer accounts. As part of these policies and procedures, a Financial Institution-A representative was required to verify the identity of any individual opening an account.

2. As explained further below, Aquino repeatedly and corruptly accepted bribes from individuals in return for creating accounts at Financial Institution-A in the names of individuals who were not present at account opening and who Aquino knew were not in fact controlling the accounts. In exchange for the bribes, Aquino also provided debit cards associated with each account, online access to the accounts,

3

and other account services. These accounts were used to transfer millions of dollars from the United States to Colombia, primarily through withdrawals at Automated Teller Machines ("ATMs") in Colombia. However, when law enforcement interviewed Aquino in or around November 2023, he made multiple false statements, including that he had only opened one or two accounts in this manner and that he had never received payment for such actions.

### Victim-1 Accounts

3. In or around April 2022, Aquino began working with a Colombian national ("Co-Conspirator-1") and others to open fraudulent bank accounts at Financial Institution-A. In return for a fee, Aquino used the names and identification of witting and unwitting foreign nationals to open accounts, which Co-Conspirator-1 and others controlled and used to transfer money from the United States to Colombia. Dozens of accounts Aquino opened in this manner shared a common address in Miami, Florida (the "Common Miami Address").

4. For example, on or about July 10, 2023, at 9:06:39 AM, Aquino opened two bank accounts at the Hollywood Branch in the name of Victim-1, a 77-year-old Colombian woman. On the account opening forms, Victim-1's address was identified as the Common Miami Address.

5. The following surveillance screenshot from Financial Institution-A depicts Aquino (at left) on or about July 10, 2023, at 9:06:39 AM, the same day and time that Aquino opened Victim-1's accounts at Financial Institution-A:



6. That same day, Aquino issued a debit card for each account opened in Victim-1's name. On or about July 27, 2023, Financial Institution-A froze both of Victim-1's debit cards due to potentially fraudulent ATM withdrawals in Colombia.

7. On or about August 3, 2023, Co-Conspirator-1 sent Aquino a text message in Spanish[1] requesting help getting multiple Financial Institution-A debit cards unblocked, including the two debit cards associated with Victim-1, which Co-Conspirator-1 identified as a priority. On or about August 3, 2023, in a recorded call, Aquino contacted Financial Institution-A's debit card hotline from the Hollywood Branch and identified several flagged ATM transactions as "valid," resulting in two of Victim 1's debit cards being unblocked and available for continued usage. On or about that same day, Aquino texted Co-Conspirator-1 in Spanish that he had unblocked Victim-1's debit cards.

8. Subsequently, Co-Conspirator-1 and others used the debit cards linked to Victim-1's accounts to purchase airfare from Colombia to the United States in or around September 2023. Co-Conspirator-1 and others provided the Common Miami Address as their personal residence address when purchasing their flights.

9. On or about September 25, 2023, Aquino, with Co-Conspirator-1 present, opened multiple additional accounts on behalf of Co-Conspirator-1 in the names of nominee owners, which accounts were then used to move funds from the United States to Colombia.

**Payments from Co-Conspirator-1 to Aquino**

10. In or around 2023, Co-Conspirator-1 transferred at least $5,600 to Aquino through a series of Zelle payments. Aquino received these payments in his personal account held at Financial Institution-A.

11. According to WhatsApp[2] conversations between Aquino and Co-Conspirator-1, these payments were in exchange for Aquino opening bank accounts at Financial Institution-A and providing ongoing services like unblocking debit cards. The messages also show that Aquino typically charged Co-Conspirator-1 approximately $200 per account and that Aquino opened approximately 28 accounts for Co-Conspirator 1 in or around May and June of 2023.

12. For example, on or about June 27, 2023, Aquino, who goes by the name "Gerry," sent the below message to Co-Conspirator-1. In the message, Aquino admitted he gave Co-Conspirator-1 at least 28 debit cards and claimed he charged Co-Conspirator-1 a lower rate per card than what he charged others for a similar service (translated to: "Man, to me this isn't business. Honestly I was thinking $200 per client with you guys. Obviously I gave you 28 cards. That $200 I'm giving you

---

[1] This and other Spanish language messages described herein have been informally translated and summarized by a Spanish-speaking agent for the purposes of this Complaint.

[2] WhatsApp is an encrypted messaging application.

5

guys, I'm not doing anymore. With other people it's $500-$800 per account man. You guys know that you are my thing."):



13. A few minutes later, Aquino sent the below message to Co-Conspirator-1 in Spanish confirming he charged $200 per debit card he provided (translated to: "I have Venezuelans, Israelis, Bolivians, all the way to Peruvians, I work with them for much more than $100 man. And less risk for me. Yes man, we both have to benefit. So we will stay at $200 then man."):



14. On or about July 26, 2023, Co-Conspirator-1 transferred $2,800 to Aquino through Zelle. The same day, Co-Conspirator-1 sent Aquino a screenshot of the payment confirmation via WhatsApp. Aquino responded, "Gracias," and sent Co-Conspirator-1 a GIF of martial artist and actor Jean-Claude Van Damme giving a thumbs-up:



### First Aquino Interview

15. On or about November 8, 2023, I, along with Special Agent Peter Chartier of the Federal Deposit Insurance Corporation, Office of Inspector General, interviewed Aquino at his home in Hollywood, Florida. During the interview, we informed Aquino that he needed to be truthful, and that lying to federal law enforcement agents could have negative consequences.

16. During the interview, Aquino said in relevant part:

   a. As a Retail Banker, Aquino applied for loans, opened accounts, and applied for credit cards on behalf of customers.

   b. Customers had to appear in person to open accounts at Financial Institution-A.

   c. In 2022 or early 2023, a man approached Aquino at Financial Institution-A to open an account and presented a foreign passport that Aquino believed to be the individual's legitimate passport. The same man also asked whether Aquino would open an account for a relative who was currently in Colombia, which Aquino did.

   d. Aquino was not compensated for opening these accounts; rather, he opened these accounts because he is "nice and can't say no."

   e. Aquino typically communicated with this individual through WhatsApp.

### Second Aquino Interview & Obstruction

17. At all times relevant to this Complaint, a federal grand jury, empaneled in the District of New Jersey, was investigating Aquino's conduct at Financial Institution-A.

18. On or about November 29, 2023, Special Agent Chartier and I spoke with Aquino again, this time by telephone. Special Agent Chartier and I were located in the District of New Jersey at the time of the call.

19. At the outset of the conversation, Special Agent Chartier informed Aquino that the conversation was being recorded; that lying to federal law enforcement agents is potentially a crime; and that the conversation related to an ongoing grand jury investigation in the District of New Jersey and that the information would be relayed to the grand jury.

20. During the ensuing conversation, Aquino made the following materially false statements:

    a. There was "one case or a couple of cases" where Aquino opened accounts in the names of individuals who were not present at the time of account opening.

    b. While he may have opened accounts for individuals that were not present at the time of account opening, Aquino was never paid, including by Zelle or with cash, for doing so.